IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PHILLIP MACE
           :

           :

    v.           :   Civil Action No. DKC 08-3216

           :

J.D. WHITEHEAD
           :

**MEMORANDUM OPINION**

Pending before the court is a *pro se* petition for a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2241, filed by Petitioner Phillip Mace, an inmate at the Federal Correctional Institution in Cumberland, Maryland ("FCI Cumberland"). Petitioner alleges that the Commonwealth of Virginia violated the Interstate Agreement on Detainers Act ("IAD"), 18 U.S.C.App. 2, § 2, by failing try him on pending charges in that State within the timeframe provided by the IAD. For the reasons that follow, the petition will be granted.

**I.   Background**

The underlying facts of the case are undisputed, unless otherwise indicated. Petitioner was convicted, upon his guilty plea in the United States District Court for the District of Columbia, of violating 18 U.S.C. § 2314, Interstate Transportation of Stolen Property, and on March 9, 2007, was sentenced to a term of incarceration of sixty months to be

followed by three years of supervised release.  He is presently serving that sentence at FCI Cumberland, and his projected release date, with good conduct time, is August 1, 2010.  (Paper 6, Ex. 1, at ¶ 4).[1]

On June 6, 2007, a detainer was lodged by the Fairfax County Police Department related to a bench warrant issued on May 1, 2006, when Petitioner failed to appear for a preliminary hearing in Fairfax County General District Court on a felony charge of possession of a controlled substance.  (Paper 6, Ex. 1, Attach. B).  After the detainer was lodged, Federal Bureau of Prisons ("BOP") personnel advised Petitioner of his rights under the IAD.  On June 18, 2007, in accordance with BOP policy and upon Petitioner's request, Lou Yearby, Inmate Systems Specialist at Cumberland FCI, sent documents to the Fairfax County Commonwealth's Attorney's Office and the Clerk of the Fairfax County General District Court indicating that Petitioner was housed at Cumberland FCI, that he requested disposition of the untried state charges, and that he was invoking his rights under the IAD.  These documents included a Certificate of Inmate Status and an Offer to Deliver Temporary Custody, which

_____

[1] Petitioner erroneously identifies July 5, 2009, as the "maximum expiration date" of his incarceratory term.  (Paper 1, at 2).

specifically requested that Virginia officials inform the BOP of their intent to bring Petitioner to trial.

On September 14, 2007, having received no response from Virginia officials, Yearby sent a follow-up letter to the Commonwealth's Attorney for Fairfax County, noting that ninety days had passed since the original notification and again requesting that Virginia officials contact the BOP.  In early January 2008, Yearby sent yet another letter to the Commonwealth's Attorney's Office, this time indicating that because the Commonwealth had failed to respond within 180 days, Petitioner would be advised that Virginia was in violation of the IAD and that he may move to dismiss the charges against him.  This letter again requested that the Commonwealth's Attorney's Office advise the BOP of its intentions with regard to Petitioner's pending case in Virginia.  To date, Virginia officials have failed to respond.

On or about July 10, 2008, Petitioner filed in "the Fairfax County Court, and served on the Commonwealth's Attorney, a motion to dismiss, with prejudice, all charges underlying the detainer lodged against him, in accordance with IAD Article V(c)."  (Paper 1, Ex. 5).[2]  In late July or early August of 2008,

---

[2] These papers reflect an execution date of January 2, 2008, but a service date of July 10, 2008.  (Paper 1, Ex. 5).  In his reply papers, Petitioner attaches a certified mail receipt

Petitioner learned from a "Unit Counselor" at FCI Cumberland that his case in Fairfax County had been placed in "fugitive status" and that no further action would be taken until expiration of his federal term. (Paper 1, at 3; Paper 6, Ex. 2). On August 20, 2008, Petitioner wrote a letter to an Assistant Commonwealth's Attorney assigned to the Fugitive Prosecutions Section of the Fairfax County Commonwealth's Attorney's Office, advising that he had learned this attorney was "responsible for making decisions as to the prosecution/disposition" of cases placed in "fugitive status," and requesting that "prompt action" be taken to dismiss the charges and remove the detainer. (Paper 1, Ex. 9). He received no response.

On December 1, 2008, Petitioner filed in this court a petition for a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2241, naming as respondents J.D. Whitehead, Warden of FCI Cumberland, and the Chief Judge of the Fairfax County Circuit Court. Petitioner alleged that a violation of the IAD occurred when the State of Virginia failed to bring him to trial within

---

reflecting that papers addressed to "Office of the Clerk – Fairfax County General – District Court" were delivered on July 11, 2008. (Paper 8, Ex. A). Petitioner claims that he filed a motion to dismiss on both January 2 and July 10, 2008. (Paper 8, at 5). Because he has verified only the July 10 date, however, the court accepts that as the date his dismissal motion was filed.

180 days of receipt of his request for prompt adjudication of the charges underlying the detainer and failed to respond to his requests that the charges be dismissed.  He further asserted that the detainer "disadvantage[d]" him by preventing his transfer to a low or minimum security facility or a pre-release halfway house and denying him access to rehabilitative programs only available at such facilities.  (Paper 1, ¶ 10).  Petitioner sought the following relief:

> (1) enter an Order directing Respondent
> Warden to remove from Petitioner's prison
> file the detainer lodged against him by
> Fairfax County authorities, and that said
> detainer shall be given no [further] force
> or effect; (2) enter an Order to Respondent
> Chief Judge directing that the indictment,
> [information] or complaint underlying the
> Fairfax detainer against Petitioner be and
> is dismissed with prejudice; (3) in the
> event habeas review of Petitioner's IAD
> claim[] is denied on ground of failure to
> exhaust available State court remedies,
> enter an order directing Respondent Warden
> to provide Petitioner with access to basic
> tools necessary to adequately pursue
> vindication of his rights under IAD in the
> appropriate State forum.

(Paper 1, at 9).

On December 9, 2008, the court issued an order granting *in forma pauperis* relief, directing that a response to the petition be filed within sixty days, and dismissing the Chief Judge of the Fairfax County Circuit Court as a respondent.  The court further advised Petitioner that to the extent he sought access

to Virginia legal materials, the proper avenue of relief was to file a separate prisoner civil rights complaint pursuant to 42 U.S.C. § 1983. (Paper 3, at 1 n. 2).[3]   The Government filed a timely response on February 6, 2009 (paper 6), and Petitioner filed reply papers on March 18, 2009 (paper 8), and a supplemental reply on May 14, 2009 (paper 9).   Although the May 14 filing was unauthorized, the court takes judicial notice of the fact that after he filed his *habeas* petition, Petitioner applied for a writ of mandamus in the Virginia Court of Appeals, seeking an order compelling the Circuit Court of Fairfax County to enter a decision on his motion to dismiss for violation of the IAD.   That petition was subsequently denied. (Paper 9, Ex. C).

## II. Analysis

As the Supreme Court of the United States explained in *New York v. Hill*, 528 U.S. 110, 111-12 (2000):

> The Interstate Agreement on Detainers (IAD) is a compact entered into by 48 States, the United States, and the District

---

[3] The practical effect of this order was to limit the relief available to Petitioner to his challenge of the Fairfax County detainer.   Indeed, this court has no authority to compel Virginia officials to dismiss the pending state charges, *see, e.g., Davis v. Lansing*, 851 F.2d 72, 74 (2nd Cir. 1988) (citing, *inter alia*, *Gurley v. Superior Court of Mecklenburg Co.*, 411 F.2d 586 (4th Cir. 1969) (per curiam)), and Petitioner's subsequent filing of a petition for a writ of mandamus in the Virginia Court of Appeals makes clear that he gained access to the Virginia legal materials he sought. (Papers 8, 9).

of Columbia to establish procedures for
resolution of one State's outstanding
charges against a prisoner of another State.
*See* [Va. Code Ann. § 53.1-210 (codifying the
IAD in Virginia)]; 18 U.S.C.App. § 2; 11A
U.L.A. 48 (listing jurisdictions). As "a
congressionally sanctioned interstate
compact" within the Compact Clause of the
United States Constitution, Art. I, § 10,
cl. 3, the IAD is a federal law subject to
federal construction. *Carchman v. Nash*, 473
U.S. 716, 719, 105 S.Ct. 3401, 87 L.Ed.2d
516 (1985); *Cuyler v. Adams*, 449 U.S. 433,
442, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981).

A State seeking to bring charges
against a prisoner in another State's
custody begins the process by filing a
detainer, which is a request by the State's
criminal justice agency that the institution
in which the prisoner is housed hold the
prisoner for the agency or notify the agency
when release is imminent. *Fex v. Michigan*,
507 U.S. 43, 44, 113 S.Ct. 1085, 122 L.Ed.2d
406 (1993). After a detainer has been
lodged against him, a prisoner my file a
"request for a final disposition to be made
of the indictment, information, or
complaint." Art. III(a). Upon such a
request, the prisoner "shall be brought to
trial within one hundred eighty days,"
"provided that for good cause shown in open
court, the prisoner or his counsel being
present, the court having jurisdiction of
the matter may grant any necessary and
reasonable continuance." *Ibid*. . . . If a
defendant is not brought to trial within the
applicable statutory period, the IAD
requires that the indictment be dismissed
with prejudice. Art. V(c).

A prisoner invoking the IAD is responsible for causing
"written notice of the place of his imprisonment and his request
for a final disposition" to be delivered to "the prosecuting
officer and the appropriate court of the prosecuting officer's

7

jurisdiction." 18 U.S.C.App. 2, § 2. "The 180-day time period detailed in Article III(a) 'does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him.'" *United States v. Thomas*, 342 Fed.Appx. 891, 892-93 (4th Cir. 2009) (per curiam) (quoting *Fex v. Michigan*, 507 U.S. 43, 52 (1993)). Where there is full compliance with the relevant conditions and the defendant is not brought to trial within 180 days, "the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect." 18 U.S.C.App. 2, § 2, Art. V(c).

### A. Exhaustion

Respondent initially contends that Petitioner's *habeas* application must be dismissed for failure to exhaust state and administrative remedies. With regard to state court remedies, Respondent asserts that although Petitioner claims to have filed two separate motions to dismiss the pending charges in Fairfax County, he has failed to attach a return receipt verifying that such a motion has been filed, and "a phone call to the Clerk's Office of the General District Court revealed no record of any filing by Petitioner in his state criminal case." (Paper 6, at

8; Ex. 2).   As to the administrative exhaustion requirement, Respondent maintains that insofar as Petitioner "challenges the effects of the detainer upon his incarceration in the BOP," his "issues can be grieved through the Bureau of Prisons' administrative remedy program, and Petitioner should be required to avail himself of that process."  (Paper 6, at 5-6).

Petitioner has established exhaustion of his state court remedies.   He attached to his initial petition a motion to dismiss, reflecting a service date upon the Commonwealth's Attorney's Office of July 10, 2008 (paper 1, ex. 5), and attached to his reply papers a certified mail receipt demonstrating that a document he sent to the "Office of the Clerk – Fairfax County General – District Court" was delivered on July 11, 2008 (paper 8, ex. A).   Regardless of whether he also filed a motion in January 2008, Petitioner has established that a dismissal motion was filed in July, approximately five months prior to the time he filed his *habeas* petition.   Indeed, the record reflects that Petitioner attempted to obtain a ruling on this motion on multiple occasions, including his filing of a petition for a writ of mandamus in the Virginia Court of Appeals.

It is unclear, moreover, whether Petitioner was even required to file a motion to dismiss the accusatory instrument in order to exhaust state remedies.   Pursuant to Article III of

9

the IAD, he was required to "cause[] to be delivered to the prosecuting office and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint." 18 U.S.C.App. 2, § 2, Art. III(a). It is undisputed that Petitioner complied with that requirement and that the BOP properly notified Virginia officials, providing the requisite certifications. Where there has been compliance with all the requirements of Article III and the receiving jurisdiction has failed to respond within 180 days, the plain language of the IAD mandates dismissal of the underlying charges by "the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending," and further provides that "any detainer based thereon shall cease to be of any force or effect." 18 U.S.C.App. 2, § 2, Art. V(c). It appears, therefore, that Petitioner was not required to move for dismissal of the indictment in order to exhaust his state court remedies. Thus, the Fairfax County Clerk's report that a motion to dismiss had not been filed is of no moment.

While § 2241 does not contain a statutory exhaustion requirement, courts have typically required petitioners to exhaust administrative remedies prior to seeking *habeas corpus* relief. The administrative exhaustion requirement allows

development of a factual record, providing for the appropriate agency to apply its expertise; permits agencies to grant requested relief, thereby conserving judicial resources; and where judicial intervention is required, it facilitates the court's review. *See Wright v. Warden, FCI-Cumberland*, Civ. No. RDB-10-671, 2010 WL 1258181, *1 (D.Md. March 24, 2010) (citing, *inter alia*, *McCarthy v. Madigan*, 503 U.S. 140, 144-45 (1992)). This requirement may be excused, however, where compliance would be futile. *Id*.

Here, the court agrees with Petitioner that "resort to the BOP administrative remedy procedure provides no genuine opportunity for adequate relief and would be futile." (Paper 8, at 8). Although Respondent maintains that the BOP could provide some relief from the effect of the detainer, he fails to specify what that relief might entail. Indeed, Respondent asserts that the BOP has fully complied with its requirements under the IAD; concedes that prejudice continues to inure to Petitioner, insofar as the detainer precludes him from participating in rehabilitative programs or being transferred to a Residential Reentry Center; and acknowledges that "there is authority for a finding that exhaustion may be futile under the particular circumstances of the instant case." (Paper 6, at 6 (citing *Williams v. Federal Medical Center*, No. 07-CV-128-JBC, 2007 WL 2702329 (E.D.Ky. Sept. 11, 2007)).

11

The court is persuaded by the reasoning of *Williams* that compliance with the BOP administrative process is unnecessary. Under similar factual circumstances, the Eastern District of Kentucky found that where "the petitioner has taken every step to manifest his desire to have the [state court] charges either dismissed or prosecuted under the time constraints established by the IADA," and "[t]he BOP processed and delivered to the [state] officials all of the requisite IADA forms relating to the detainer lodged in connection with the [state] charge," "no further action is required under the IADA by either the petitioner or the BOP." *Williams*, 2007 WL 2702329, at *4. As noted, there is no dispute in this case that both Petitioner and the BOP have complied with the requirements of the IAD; indeed, it is difficult to imagine what additional steps either party could have taken to facilitate adjudication of the pending charges in Virginia. Thus, requiring exhaustion of the BOP's administrative remedies would do nothing to alter the *status quo*, and would, therefore, be pointless.

**B.   Venue**

Although this court has jurisdiction over this matter because Petitioner is confined in the District of Maryland, the *habeas* petition challenges a detainer lodged by Fairfax County Police Department; thus, the Eastern District of Virginia has concurrent jurisdiction. *See Braden v. 30th Judicial Circuit*,

410 U.S. 484, 499 n. 15 (1973).   In *Braden*, the Supreme Court explained that the court in the district of confinement "will not in the ordinary case prove as convenient as the district court in the State which has lodged the detainer."   *Id*. Respondent thus urges that the case should be transferred to the Eastern District of Virginia because that is "where all the material events took place, where the records and witnesses are likely to be found," and "it is simpler and less expensive to litigate the question in that state rather than in the state [that] the inmate is housed."  (Paper 6, at 4).

This argument is curious, however, in light of Respondent's additional claims that dismissal of the criminal charges lies exclusively "within the jurisdictional authority and purview of the Courts of the State of Virginia," and that "[a]t most, this [c]ourt may find it within its authority to quash the detainer lodged by Virginia under the particular facts and circumstances of the instant case but without dismissing the state charges underlying the detainer."  (*Id*. at 11).  In other words, if the IAD does not permit a federal court to affect the underlying state court charges, then the Eastern District of Virginia would be in no better position than this court to grant relief, in which case the proposed transfer would serve no legitimate purpose.

The IAD provides that "'State' shall mean a State of the United States; the United States of America; a territory or possession of the United States; the District of Columbia; [or] the Commonwealth of Puerto Rico." 18 U.S.C.App. 2, § 2, Art. II(a). The "Sending State" is defined as the "State in which a prisoner is incarcerated at the time that he initiates a request for final disposition pursuant to article III," *id*. at Art. II(b), and the "Receiving State" is "the State in which trial is to be had on an indictment, information, or complaint pursuant to article III or article IV hereof," *id*. at Art. II(c). In this case, then, the United States of America is the "Sending State" and Virginia is the "Receiving State." A transfer to the Eastern District of Virginia would do nothing to alter that equation, as that court would simply assume the role of "Sending State" and would appear to have no greater ability to adjudicate Petitioner's claims than would this court. Accordingly, the case will not be transferred.

### C. Relief

It is undisputed that Petitioner properly invoked his rights under the IAD, that the BOP fulfilled its obligations, and that Virginia officials failed to take action within 180 days of notification. Thus, all conditions of the IAD have been met, and pursuant to Article V(c), Petitioner would appear to be eligible for dismissal of the pending charges in Fairfax County.

"If Petitioner . . . wishes to pursue that objective," however, "he must continue to avail himself fully of the machinery in the state courts of [Virginia]." *Williams*, 2007 WL 2702329, at *8 (citing *Atkins v. Michigan*, 644 F.3d 543, 546 n. 1 (6th Cir. 1981); *Anaya v. Tennessee Dep't of Corr.*, 1986 WL 8844, *1-2 (E.D.Tenn. June 6, 1986)).  "There is no precedent that would permit this Court, as the sending jurisdiction, to *dismiss* the untried charges." *Miles v. Rees*, Civ. No. 6:07-89-KKC, 2007 WL 1455872, *2 (E.D.Ky. May 15, 2007) (emphasis in original).

    As Respondent candidly observes, however, a number of courts have recognized that "the sending jurisdiction may *quash a detainer* lodged by another state under limited circumstances, where the prisoner's rights under the IADA have been violated and the receiving jurisdiction has failed to dismiss the indictment." *Williams*, 2007 WL 2702329, at *5 (emphasis in original) (citing *Schofs v. Warden, FCI, Lexington*, 509 F.Supp. 78, 82 (E.D.Ky. 1981); *Degina v. Carlson*, 1986 WL 15401, *5 (D.Conn. Dec. 22, 1986)); *see also Gibson v. Klevenhagen*, 777 F.2d 1056, 1058 (5th Cir. 1985) (reversing district court dismissal of petitioner's *habeas* petition based on claims IAD violation and remanding with instructions, *inter alia*, to remove a detainer).  Under the persuasive reasoning of *Williams*, and cases cited therein, the court finds that the same result should obtain here.  Accordingly, the detainer lodged against

Petitioner by the Fairfax County Police Department will be quashed, and will cease to have any effect insofar as it affects the conditions of Petitioner's present confinement at FCI Cumberland.

## III. Conclusion

For the foregoing reasons, Petitioner's application for a writ of *habeas corpus* will be granted. A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge